1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    MICHAEL HILYAR, et al.,                    CASE NO. C24-0423JLR

11                          Plaintiffs,          ORDER

12            v.

13    SAFECO INSURANCE COMPANY
      OF AMERICA,

14
                            Defendant.
15

16                          I.    INTRODUCTION

17        Before the court are (1) a motion for a protective order filed by Defendant Safeco

18  Insurance Company of America ("Safeco") (MPO (Dkt. # 37); MPO Reply (Dkt. # 57));

    (2) a motion to supplement the record filed by Plaintiffs Michael Hilyar and Angela
19
    Hilyar (Mot. to Supp. (Dkt. # 71)); and (3) a motion to compel discovery filed by the
20
    Hilyars (MTC (Dkt. ## 31 (sealed), 34 (redacted)); MTC Reply (Dkt. ## 48 (redacted),
21
    50 (sealed)).)  The parties oppose each other's discovery motions.  (MPO Resp. (Dkt.
22

ORDER - 1

1    ## 52 (redacted), 55 (sealed)); MTC Resp. (Dkt. # 40)).)  The court has reviewed the

2    parties' submissions, the balance of the record, and the applicable law.  Being fully

3    advised,[1] the court GRANTS Safeco's motion for a protective order, GRANTS the

4    Hilyars' motion to supplement the record,[2] and GRANTS in part and DENIES in part the

5    Hilyars' motion to compel.

6                        **II.    BACKGROUND**

7        The court detailed the factual background of this case and the Hilyars' allegations

8    in its May 23, 2025 order and does not repeat that discussion here, except as is relevant.

9    (*See* 5/23/25 Order (Dkt. # 63) at 2-4.)  In brief, the Hilyars allege that Safeco issued an

10   insurance policy for their home in Bellingham that covered, in pertinent part, damage

11   from water seepage and leakage, fungi, wet and dry rot, and bacteria.  (Am. Compl. (Dkt.

12   # 1-3) ¶¶ 8, 10.)  After the Hilyars allegedly suffered covered losses, they submitted two

13   insurance claims to Safeco.  (*See id.* ¶¶ 12-14 (the "2022 Claim"), 15-16 (the "2023

14   Claim").)[3]  Safeco initially denied coverage for the 2022 Claim, but reopened the 2022

15   Claim in August 2023.  (4/23/25 Bowman Decl. (Dkt. # 59) ¶¶ 2, 4, Exs. A, C at 6-7.)  In

16

17

18

19        [1] Neither party requests oral argument, and the court concludes that oral argument is not
20   necessary to decide the parties' motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

          [2] The court exercises its discretion to consider Plaintiffs' motion to supplement the record
21   before its noting date.

          [3] The 2022 Claim was assigned number 049339337, and the 2023 Claim was assigned
22   number 054320185.  (*See* 4/23/25 Bowman Decl. ¶ 2, Ex. A.)

ORDER - 2

2023, Safeco paid the Hilyars $3,104.11 on the 2022 Claim, and $2,983.96 on the 2023 Claim.[4]  (*Id.* ¶ 2, Ex. A.)

In January 2024, the Hilyars filed suit against Safeco in state court.  (Aragon Decl. (Dkt. # 3) at 1-2, Ex. 1.)  The Hilyars amended their complaint in February 2024, (*see* Am. Compl.), and Safeco then removed the case to this district.  (NOR (Dkt. # 1).)  The Hilyars allege several failures on Safeco's part that they say resulted in damage to and mold growth in their home, including Safeco's failure to explain the Hilyars' rights and benefits under the policy, to timely communicate with the Hilyars, and to honor its obligations under the policy and under applicable laws and regulations.  (Am. Compl. ¶¶ 29-40.)  The Hilyars' operative complaint includes eight causes of action against Safeco:  (1) a declaratory judgment that, in pertinent part, the Hilyars are entitled to coverage; (2) breach of contract; (3) violation of the duty of good faith in handling the Hilyars' claims; (4) negligent claims handling; (5) violation of the Washington Consumer Protection Act ("CPA"); (6) misrepresentation concerning the Hilyars' policy's terms and benefits; (7) constructive fraud; and (8) violation of the Washington Insurance Fair Conduct Act ("IFCA").  (*Id.* ¶¶ 48-102.)

On January 13, 2025, the parties stipulated to, and the court entered, a protective order governing "confidential, proprietary, or private information" produced during discovery "for which special protection may be warranted."  (PO (Dkt. # 23) at 1.)  As

---

[4] On May 19, 2025, Safeco sent Mr. Hilyar a letter, to the care of the Hilyars' counsel in this action, advising that Safeco was issuing an additional $21,895.89 payment for the 2022 Claim and an additional $22,016.04 payment for the 2023 Claim.  (6/3/25 Castaneda Decl. (Dkt. # 72) ¶ 3, Ex. A.)

1 the parties conducted discovery, Safeco moved for a protective order (MPO), and the

2 Hilyars filed a motion to compel (MTC).  These two discovery motions are fully briefed

3 and ripe for decision.

## III.    DISCUSSION

5      The court first discusses the applicable legal standards and then turns to the

6 parties' motions.

### A.    Legal Standard

8      Federal Rule of Civil Procedure 26 governs the standard for producing discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed discovery outweighs its
> likely benefit.

Fed. R. Civ. P. 26(b)(1).  For purposes of discovery, relevant information is that which is

"reasonably calculated to lead to the discovery of admissible evidence."  *Brown Bag*

*Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also* Fed. R. Civ.

P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1), however, "emphasize the need to

impose reasonable limits on discovery through increased reliance on the common-sense

concept of proportionality."  *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash.

2018) (quotations and citation omitted).  "[B]road discretion is vested in the trial court to

permit or deny discovery[.]"  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

21      Even if a discovery request seeks relevant and proportional information, a party or

22 person from whom discovery is sought may move for a protective order to seek

1    protection from "annoyance, embarrassment, oppression, or undue burden or expense[.]"

2    *See* Fed. R. Civ. P. 26(c)(1); *see also Garner v. Amazon.com, Inc.*, No. C21-0750RSL,

3    2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (same).  The court may issue a

4    protective order upon a showing of good cause, with the burden on the party requesting

5    the protective order to show "specific prejudice or harm" if an order does not issue.  *See*

6    *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017) (quoting

7    *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).  In response to

8    such a motion, or on its own motion, the court must limit the scope of discovery

9    otherwise allowable under the federal rules if it determines that:  (i) "the discovery sought

10   is unreasonably cumulative or duplicative, or can be obtained from some other source

11   that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking

12   discovery has had ample opportunity to obtain the information by discovery in the

13   action"; or (iii) "the proposed discovery is outside the scope permitted by Rule

14   26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

15       Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move

16   for an order compelling an answer, designation, production, or

17   inspection."  Fed. R. Civ. P. 37(a)(3)(B).  The court may order a party to provide further

18   responses to an "evasive or incomplete disclosure, answer, or response[.]"  *See* Fed. R.

19   Civ. P. 37(a)(4).  The party seeking to compel discovery has the burden of establishing

20   that its requests are relevant and proportional to the needs of the case.  *See* Fed. R. Civ. P.

21   26(b)(1); *see also Hancock*, 321 F.R.D. at 390 (the party moving to compel "bears the

22   burden of demonstrating that the information it seeks is relevant and that the responding

party's objections lack merit").  The party who resists discovery, however, "has the

burden to show that discovery should not be allowed," and has the burden "of clarifying,

explaining, and supporting its objections" with competent evidence.  *See Doe*, 329 F.R.D.

at 270 (quotation omitted).

**B.    Safeco's Motion for a Protective Order**

Safeco moves for an order preventing the Hilyars from discovering Jason Pipkin's

personnel files from his time as a Safeco employee.[5]  (MPO at 12-13.)  Safeco argues that

this discovery is irrelevant and not proportional to the needs of this case.  (*Id.* at 9.)

Additionally, Safeco asserts that the court should issue a protective order to prevent

annoyance, embarrassment, and oppression of Mr. Pipkin, who is not a party to this

action.  (*Id.*)  The Hilyars respond that discovery into Mr. Pipkin's "performance,

discipline, and termination" is "critical not only to understanding the circumstances

surrounding the Hilyars' claim[s,] but also to establishing institutional knowledge,

practices, or policies relevant to the Hilyars' claims."  (MPO Resp. at 5.)  The Hilyars

contend that this discovery is "central . . . to the Hilyars' allegations of bad faith and

unfair claims practices."  (*Id.* at 4.)  In relevant part, the Hilyars' operative complaint

includes allegations that Safeco (1) violated the duty of good faith,[6] (2) negligently

---

[5] From September 2020 until November 15, 2024, Mr. Pipkin worked as a claims adjuster for a corporate affiliate of Safeco.  (Pipkin Decl. (Dkt. # 39) ¶ 1-2.)

[6] The duty of good faith requires insurers in Washington to act in good faith when dealing with insureds.  *See* RCW 48.01.030.  A violation of this duty may give rise to the tort of bad faith if the insured shows that the insurer's breach was "unreasonable, frivolous, or unfounded."  *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276-77 (Wash. 2003).

1    handled the Hilyars' insurance claims, and (3) violated IFCA by "unreasonably den[ying]

2    coverage or payment of benefits[.]"  (Am. Compl. ¶¶ 59-70, 92-102.)

3           In actions involving claims of insurance bad faith, courts typically do not take a

4    bright-line approach to discovery concerning employee personnel files.  Instead, courts

5    look to the facts of the case and the role of the employees in question to determine the

6    extent of allowable discovery, if any, into those employees' personnel files.  For instance,

7    courts are less likely to find that such discovery is within the scope of Rule 26(b)(1) when

8    an insurer explains that a particular employee had only "limited involvement in the

9    claims process" or was "not involved in the decision to deny benefits[.]"  *See*

10   *Ghorbanian v. Guardian Life Ins. Co. of Am.*, No. C14-1396RSM, 2016 WL 4467942, at

11   *2 (W.D. Wash. Mar. 31, 2016).  Courts also require the party seeking employee

12   personnel files to explain how the files are needed to inform a relevant theory in the case.

13   *See Paschal v. Am. Fam. Mut. Ins. Co.*, No. C14-1640RSM, 2015 WL 4431008, at *4

14   (W.D. Wash. July 20, 2015) (granting a protective order as to employee personnel files

15   because, in pertinent part, the party seeking discovery failed to explain why access to

16   employee personnel files was necessary to pursue the theory that an insurer offered

17   incentives to undervalue claims).

18          As one court in this circuit has explained, personnel files contain sensitive

19   information that is entitled to protection, but those concerns should give way where the

20   material sought is "clearly relevant" and the need for discovery is compelling:

21          Federal courts recognize a person's interest in preserving the confidentiality
            of sensitive information contained in personnel files.  However, even where
22          strong public policy against disclosure exists, as in the case of personnel files,

1    discovery is nonetheless allowed if the material sought is clearly relevant and
2    the need for discovery is compelling because the information sought is not
     otherwise readily obtainable.

3    *Vibal v. GEICO Cas. Co.*, No. 17CV534-LAB(BLM), 2018 WL 571948, at *3 (S.D. Cal.

4    Jan. 26, 2018) (cleaned up).  By way of example, when an employee engages in unusual

5    or unexplained behavior relevant to the claims at issue, courts may order production of

6    the employee's personnel file.  *See Costco Wholesale Corp. v. Arrowood Indem. Co.*, No.

7    C17-1212RSL, 2018 WL 4385853, at *3 (W.D. Wash. Sept. 14, 2018) (concluding that

8    the personnel file and termination-related documents for a particular employee were

9    proportional to the needs of the case because the employee closed a claim file without

10   notice to the insured, conducted "limited file updates and reviews" until her retirement,

11   and then failed to provide the insured with a new contract).  Likewise, limited discovery

12   into personnel files may relate to express allegations concerning the competency of

13   individuals handling claims and the incentives in place to handle claims in a particular

14   manner.  *See Knaack v. Allied World Spec. Ins. Co.*, No. C23-1679BJR, 2024 WL

15   1049819, at *1-2 (W.D. Wash. Mar. 11, 2024).

16        Here, the court's analysis of discovery of materials in Mr. Pipkin's personnel file

17   differs by time period.  For the period before 2023, the court concludes that discovery

18   into Mr. Pipkin's file is not relevant.  Mr. Pipkin did not become involved with either the

19   2022 Claim or the 2023 Claim until August 2023.  (4/23/25 Bowman Decl. ¶¶ 4-5, Ex. C

20   at 6, Ex. D at 5.)  His personnel records from the year before he worked on the Hilyars'

21   insurance claims do not relate to the Hilyars' allegations concerning Safeco's handling of

22   their claims.

1    As to Mr. Pipkin's file during and after 2023, the court concludes that this

2  discovery is not proportional to the needs of this case, and further that there is good cause

3  to enter an order denying the requested discovery to protect Mr. Pipkin from annoyance,

4  embarrassment, and oppression.  First, discovery into Mr. Pipkin's personnel file is not

5  particularly important to resolving the issues in this action.  Although Mr. Pipkin was the

6  adjuster who ultimately sent the Hilyars two letters affording coverage on the 2022 Claim

7  and the 2023 Claim, respectively (4/23/25 Bowman Decl. ¶¶ 9, 11, Exs. H, J), Mr. Pipkin

8  was only one of three different adjusters who worked on those insurance claims, (*see id.*

9  ¶¶ 4-5, Exs. C, D).  Mr. Pipkin was not involved in the initial denial of the 2022 Claim.

10  (*See Id.* ¶ 4, Ex. C at 6-7.)  And, after the 2022 Claim was reopened, it was initially

11  assigned to a different adjuster.  (*Id.* ¶ 4, Ex. C at 7.)

12    Moreover, the court disagrees that the circumstances of Mr. Pipkin's departure

13  from Safeco are relevant.  Mr. Pipkin remained employed by Safeco until November 15,

14  2024—over a year after he informed the Hilyars of coverage on their insurance claims.

15  (*See* Pipkin Decl. ¶ 1-2; 4/23/25 Bowman Decl. ¶¶ 9, 11, Exs. H, J.)  This delay alone

16  means that the circumstances of Mr. Pipkin's departure from Safeco are likely of little

17  importance to resolving the issues here.[7]  Moreover, Mr. Pipkin submitted a declaration

18  stating that he sustained personal injuries in 2023 and 2024 that required him to take leave

19

20    [7] There is also no indication in the record that Mr. Pipkin was involved in Safeco's May
   19, 2025 letter, in which a different Safeco employee advised Mr. Hilyar that Safeco was issuing

21  additional payments for the 2022 Claim and the 2023 Claim.  (*See* 6/3/25 Castaneda Decl. ¶ 3,
   Ex. A.)  Indeed, this letter came well after Mr. Pipkin's employment with Safeco ended in

22  November 2024.  (*See* Pipkin Decl. ¶ 1-2.)

1   under the Family and Medical Leave Act ("FMLA"), and that all of his performance

2   reviews during this time considered his health, his medical conditions, and his medical

3   leaves of absence.  (Pipkin Decl. ¶ 5.)  This not only explains Mr. Pipkin's desire for

4   privacy; it further demonstrates the tangential relation of his personnel file during this

5   time to the issues in this case.

6         Second, the Hilyars have already obtained extensive discovery on the topics to

7   which Mr. Pipkin's personnel file could relate.  Mr. Pipkin's file during 2023 and later

8   might provide some additional insight into Safeco's practices in handling the Hilyars'

9   insurance claims.  Safeco, however, has already provided a complete list of all the

10  trainings attended by Mr. Pipkin and the other adjusters who handled the Hilyars'

11  insurance claims and the performance reviews of the other adjusters;[8] has made Mr.

12  Pipkin and the other adjusters available for depositions; and has provided Rule 30(b)(6)

13  testimony and documents demonstrating its relevant claims handling policies and

14  practices.  (MTC at 13 (acknowledging that Safeco provided "a list of trainings for the

15  three primary adjusters"); 3/17/25 Knudsen Decl. (Dkt. # 35) ¶ 6, Exs. M, Q, R

16  (depositions of adjusters); 4/1/25 Bowman Decl. (Dkt. # 41) ¶ 2 (stating that Safeco

17  produced over 700 pages of claims handling guidelines and manuals).)  Therefore, even

18  assuming that discovery into Mr. Pipkin's file could provide insight into these same

19  topics, such discovery would simply be cumulative.

20

21

22  _____
    [8] Unlike Mr. Pipkin, neither of the other adjusters submitted declarations asserting their
    privacy interests in their personnel files.  (*See generally* Dkt.)

ORDER - 10

1    Third, the potential benefit of discovering Mr. Pipkin's personnel file during and

2    after 2023 is outweighed by the annoyance, embarrassment, and burden that Mr. Pipkin

3    would suffer.  The court has already discussed the limited relevance of Mr. Pipkin's

4    personnel file in the context of this case.  The court also observes that Mr. Pipkin is not a

5    party to this action and that the Hilyars' complaint does not mention Mr. Pipkin or refer

6    to the conduct of any Safeco adjuster in particular.  (*See generally* Am. Compl.)  In

7    contrast to the limited benefits of the requested discovery, Mr. Pipkin's privacy interests

8    in his file are weighty.  Mr. Pipkin centers his assertion of privacy on a limited period of

9    time during which his personnel file and the evaluations in that file were particularly

10   likely to focus on his private medical concerns and FMLA absences from work.  (Pipkin

11   Decl. ¶¶ 5-7.)  In addition to narrowly asserting his privacy and persuasively supporting

12   his assertions, Mr. Pipkin has cooperated in this action by providing deposition testimony

13   and waiving his privacy interests before 2023.[9]  (*See id.*)

14       In sum, the court finds good cause to issue a protective order preventing discovery

15   into Mr. Pipkin's personnel file.[10]

16

17

18   _____

19   [9] Accordingly, Safeco offered to produce performance reviews for Mr. Pipkin from
     before 2023 as a compromise with the Hilyars.  (4/1/25 Handler Decl. (Dkt. # 38) ¶ 4.)

20   [10] The court is cognizant that the stipulated protective order in this matter provides some
     protection against the general disclosure of Mr. Pipkin's file outside of discovery.  (*See* 1/13/25

21   Order (Dkt. # 23).)  Nevertheless, the lack of specific allegations concerning Mr. Pipkin's
     conduct or the conduct of any adjuster in particular—as well as Mr. Pipkin's narrow assertion of
     privacy, his explanation for his assertion, and his cooperation—persuade the court that there is

22   good cause here to protect Mr. Pipkin's personnel file from disclosure.

1    **C.    The Hilyars' Motion to Compel**

2        The Hilyars request three categories of discovery, each of which the court will

3    address in turn:  (1) the complete claim files for the 2022 Claim and the 2023 Claim,

4    including materials over which Safeco has asserted a privilege or protection;

5    (2) compensation information for Safeco's employees; and (3) training material for the

6    adjusters working on the Hilyars' insurance claims.[11]  (*See* MTC at 6-8.)

7        1.   2022 and 2023 Claim Files

8        Typically, parties "may obtain discovery regarding any nonprivileged matter" that

9    is relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  When a

10   party withholds information otherwise discoverable by claiming that the information is

11   privileged or subject to other protection, the party must expressly make that claim and

12   describe the nature of the materials not produced "in a manner that, without revealing

13   information itself privileged or protected, will enable other parties to assess the claim."

14   Fed. R. Civ. P. 26(b)(5).  A proper privilege log satisfies these requirements.  *See*

15   *Burlington Northern & Santa Fe Ry. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1148 (9th Cir.

16   2005) (citing *United States v. Corp. (In re Grand Jury Investigation)*, 974 F.2d 1068,

17   1071 (9th Cir. 1992)).

18       Washington courts apply a presumption of discoverability in the insurance bad

19   faith context and do not permit "a blanket privilege" simply when an insurer's attorneys

20   are involved, because doing so would "unreasonably obstruct discovery of meritorious

21

22   _____

[11] The court has already addressed the Hilyars' request for materials within Mr. Pipkin's personnel file and does not do so further here.

1    claims and conceal unwanted practices." *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d

2    239, 245 (Wash. 2013).  An insurer, however, "may overcome the presumption of

3    discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of

4    investigating and evaluating or processing the claim, but instead in providing the insurer

5    with counsel as to its own potential liability; for example, whether or not coverage exists

6    under the law." *PC Collections, LLC v. Starr Indem. Co.*, No. C21-5754RSL, 2024 WL

7    3552410, at *1 (W.D. Wash July 26, 2024) (quoting *Cedell*, 295 P.3d at 246).  In state

8    court, parties may be entitled to *in camera* review to resolve their disputes concerning

9    privilege in this area, but there is no such entitlement in federal court.  *See, e.g.*, *Ingenco*

10   *Holdings, LLC v. Ace Am. Ins. Co.*, No. C13-0543RAJ, 2014 WL 6908512, at *3 (W.D.

11   Wash. Dec. 8, 2014) ("[The court] observes . . . that every federal court to consider the

12   issue has held that the in camera review mandate of *Cedell* does not apply in federal

13   court.").

14       Safeco asserts that it produced the complete set of materials for each of the

15   Hilyars' insurance claims, less any materials protected by privilege or the work-product

16   doctrine.[12]  (*See* MTC Resp. at 5.)  The Hilyars, however, dispute Safeco's assertion of

17   privilege and work-product protection, arguing generally that there is no protection for

18   quasi-fiduciary tasks like investigating, evaluating, and processing claims.  (MTC Reply

19   at 3.)  They also assert that, if the court does not grant their motion, the court should

20

21       [12] The record reflects that Safeco continued to work on the Hilyars' insurance claims in
     2025 and sent a letter to Mr. Hilyar advising of additional payments.  (*See* 6/3/25 Castaneda
22   Decl. ¶ 3, Ex. A.)  This letter was sent directly to the Hilyars' counsel in this action (*see id.*), and
     there is no evidence in the record that Safeco has failed to supplement its productions.

1    review all of the material contained in Safeco's privilege log *in camera* "to evaluate

2    application of privilege[,]" because the Hilyars have objected generally to Safeco's

3    assertion of privilege.  (*See* MTC at 11-12.)  The court disagrees with the Hilyars.

4        Safeco submitted a copy of the complete privilege log that it provided to the

5    Hilyars.  (*See* 4/1/25 Bowman Decl. ¶ 3, Ex. A ("Privilege Log").)  The court has

6    carefully reviewed this log and concludes that it provides sufficient information under

7    Rule 26(b)(5) to support Safeco's assertions by including the following:  the date, author,

8    and recipient of the document redacted or withheld; the nature of the document; and the

9    nature of the privilege asserted.  (*See generally* Privilege Log.)  Additionally, the log

10   reflects a strong preference for redacting documents, rather than withholding them

11   completely, which provides additional information to use in assessing Safeco's assertions

12   of privilege or other protection.  (*See id.*); *see also Burlington Northern*, 408 F.3d at 1148

13   (noting that redacting privileged material is a way to convey "some information about the

14   content of the allegedly privileged material, which a boilerplate objection does not do").

15   Moreover, Safeco submitted a declaration from Matthew Adams, an attorney who

16   represented Safeco in this matter from January 25, 2024 until his retirement at the end of

17   2024.  (4/3/25 Adams Decl. (Dkt. # 42) ¶¶ 2-3.).  In his declaration, Mr. Adams stated

18   that he was not involved in quasi-fiduciary tasks like adjusting or evaluating claim

19   payment, but instead provided Safeco with advice as to its legal rights, obligations, and

20   potential liability in response to a notice of intent to sue from the Hilyars.  (*See id.*

21   ¶¶ 2-8.)

22

Accordingly, the court concludes that Safeco has satisfied its obligations in asserting its privileges and protections, and that Safeco has overcome the presumption of discoverability by showing that its attorney was not engaged in quasi-fiduciary tasks. The court denies the Hilyars' request to conduct an *in camera* review of every document in Safeco's privilege log, and denies the Hilyars' motion to compel with respect to Safeco's assertions of privilege and work-product protection.[13]

2. Employee Compensation Information

Bonus and incentive programs that compensate and reward adjusters can be relevant to show that an insurance company "was rewarding its adjusters financially for clamping down on coverage and defense costs." *Cf. Miller v. Kenney*, 325 P.3d 278, 299 (Wash. Ct. App. 2014). Accordingly, these materials are proper discovery in an insurance bad faith claim. *See id.*; *Bagley v. Travelers Home and Marine Ins. Co.*, No. C16-0706, 2016 WL 4494463, at *5 (W.D. Wash. Aug. 25, 2016).

The Hilyars' seek discovery into the financial goals, metrics, and measures used to determine adjuster bonuses. (*See* MTC at 14-16.) Their discovery requests to Safeco, however, are sweeping and unbounded from the needs of this case. (*See* Knudsen Decl. ¶ 6, Ex. H at 5 (topic nos. 17-19 and notice to produce).) Specifically, the Hilyars

---

[13] In their reply, the Hilyars also argue, for the first time, that Safeco improperly redacted its claim files to remove discoverable information concerning claim reserves, rather than limiting its redactions to only privileged or protected information. (MTC Reply at 4-5.) The court declines to address this new argument because it was raised for the first time in reply. *See Bridgham-Morrison v. Nat'l Gen. Assurance Co.*, C15-0927RAJ, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments and evidence presented for the first time on Reply . . . are generally waived or ignored.").

1    request, in pertinent part, deposition testimony and "any and all" documents from five

2    years prior to their loss related to "plans, programs, initiatives, policies, protocols, and

3    procedures for saving money"; "financial metrics . . . tied to performance of the claims

4    department"; and "bonuses, compensation, or other incentives given or paid to the claims

5    representatives, claims managers, or their supervisors, who worked on the subject

6    claim[s.]"  (*Id.*)  The Hilyars double-down on their requests in their briefing, asserting

7    that all of these requests are relevant and have already been "narrowed[.]"  (MTC Reply

8    at 5-6.)

9         For its part, Safeco denies that any of these requests are relevant.  (MTC Resp. at

10   10.)  And, in discovery, Safeco produced only two brochures summarizing its incentive

11   plan.  (*See* 3/17/25 Knudsen Decl. ¶ 6, Exs. J (sealed), K (sealed)).  One of these

12   brochures referenced a separate incentive plan document, which apparently was not

13   produced, that controlled in the event of a discrepancy with the brochure.  (*See id.* ¶ 6,

14   Ex. J (sealed).)

15        The court observes that neither party has behaved reasonably in discovery with

16   respect to these materials.  The Hilyars' refusal to narrow their sweeping requests is

17   concerning, as is Safeco's refusal to acknowledge that there is a small core of "highly

18   relevant" materials within the Hilyars' requests, which it apparently has failed to produce.

19   *See Bagley*, 2016 WL 4494463, at *5.  Accordingly, the court grants the Hilyars' motion

20   in part as to employee compensation information and orders Safeco to produce

21   documents or testimony sufficient to show:  (1) the full terms of all employee

22   compensation and incentive plans, in effect from January 1, 2022 to December 31, 2023,

1  that were available to Mr. Pipkin, Mark Alice, or Joseph Madera;[14] and (2) the dates that

2  such plans were in effect.

3      3.  Training Materials

4      Training materials can be relevant discovery to show how insurance companies

5  handle claims; to show how insurance companies train and expect their employees to

6  handle claims; and to show whether claims adjusters handled claims properly.  *See*

7  *Knaack*, 2024 WL 1049819, at *1-2; *Bagley*, 2016 WL 4494463, at *5 ("[T]raining

8  materials are discoverable . . . [and] other courts in this District have held that claim

9  manuals are also discoverable.") (citing *Rinehart v. Life Ins. Co. of N. Am.*, No. C08-

10  05486RBL, 2009 WL 2240286, at *2 (W.D. Wash. July 27, 2009)).

11      The Hilyars, however, request broad discovery of all training materials "related to

12  claims handling" for five years, including manuals, guidelines, standards, policies,

13  protocols, memoranda, seminar materials, and publications.  (MTC at 13-14; 3/17/25

14  Knudsen Decl. ¶ 6, Ex. H at 4.)  This is far from proportional to the needs of the case,

15  especially considering that the three primary adjusters on the Hilyars' insurance claims

16  have already given deposition testimony; Safeco has produced a complete, and lengthy,

17  list of the titles of all the trainings taken by those adjusters; and Safeco has produced over

18  700 pages of training manuals and guidelines that it maintains in its knowledge center for

19  adjusters to reference.  (MTC Resp. at 13; 3/17/25 Knudsen Decl. ¶ 6, Ex. S.)

20

21

22  _____

[14] These individuals were the three primary adjusters who worked on the Hilyars'
insurance claims.  (*See* 4/23/25 Bowman Decl. ¶¶ 4-5, Exs. C, D; MPO at 9.)

ORDER - 17

1        Indeed, a review of the list of the adjusters' trainings shows just how burdensome

2    it would be to comply with the Hilyars' requests:  the adjusters each took numerous

3    trainings in a variety of formats, each of which likely involved informational handouts,

4    videos, or other training materials.  (*See* 3/17/25 Knudsen Decl. ¶ 6, Ex. S.)  This list

5    includes over 70 pages of entries.  (*See id.*)  Ordering Safeco to attempt to collect all of

6    the materials associated with these numerous trainings would impose a significant,

7    disproportionate, and unnecessary burden on Safeco.

8        Safeco, however, has not stated that it has produced all of its training and

9    reference materials from its central repository that were available to the adjusters.

10    Collecting these materials should be a relatively simple task because they have already

11    been compiled by Safeco into a centralized location or locations for its employees to

12    reference.  Accordingly, the court grants the Hilyars' motion in part and orders Safeco to

13    produce, to the extent it has not already done so and to the extent that they still exist, all

14    training and reference materials covering claims handling that are stored in a central

15    repository maintained by Safeco, including its knowledge center, and that were available

16    to Mr. Pipkin, Mark Alice, or Joseph Madera from January 1, 2022 to December 31,

17    2023.

18    ### IV.    CONCLUSION

19        For the foregoing reasons, the court GRANTS Safeco's motion for a protective

20    order (Dkt. # 37).  Further, the court GRANTS the Hilyars' motion to supplement the

21    record (Dkt. # 71), and GRANTS in part and DENIES in part the Hilyars' motion to

22    compel (Dkt. # 34) as follows:

1) The court DENIES the Hilyars' motion with respect to claims files and Safeco's assertions of privilege and work-product protection.

2) The court GRANTS in part the Hilyars' motion with respect to employee compensation and ORDERS Safeco to produce the following:  documents or testimony sufficient to show (A) the full terms of all employee compensation and incentive plans, in effect from January 1, 2022 to December 31, 2023, that were available to Mr. Pipkin, Mark Alice, or Joseph Madera; and (B) the dates that such plans were in effect.

3)  The court GRANTS in part the Hilyars' motion with respect to training materials and ORDERS Safeco to produce, to the extent it has not already done so and to the extent that they still exist, all training and reference materials covering claims handling that are stored in a central repository maintained by Safeco, including its knowledge center, and were available to Mr. Pipkin, Mark Alice, or Joseph Madera from January 1, 2022 to December 31, 2023.

Dated this 4th day of June, 2025.

JAMES L. ROBART
United States District Judge